DAN RAYFIELD
Attorney General
NATHANIEL AGGREY #172283
Senior Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
Telephone: (503) 947-4700
Fax: (503) 947-4791
Email: Nathaniel.Aggrey@doj.oregon.gov

SETH LICHENSTEIN-HILL #212684
Senior Assistant Attorney General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  Seth.Lichenstein-Hill@doj.oregon.gov

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| JACOB STROCK, TARJEN JOKON, JAMES LIBOKMETO, JAMES DENTEL, MICHAEL WESLEY, and DYLAN PETERSON,<br><br>Plaintiffs,<br><br>v.<br><br>OREGON DEPARTMENT OF CORRECTIONS, JAMIE MILLER, MIKE REAL, DAVID JANTZ, BRANDON KROPP, BLAKE SURERUS, STACY BROTHERTON, MICHAEL FRANKS, and TYLER TARVIN,<br><br>Defendants. | Case No. 2:22-CV-01904-HL<br><br>DEFENDANTS' TRIAL MEMORANDUM |

Defendants Oregon Department of Corrections, Jamie Miller, Mike Real, David Jantz,

Brandon Kropp, Blake Surerus, Stacy Brotherson, Michael Franks, and Tyler Tarvin, by and

Page 1 -    DEFENDANTS' TRIAL MEMORANDUM
NA3/bm6/1017280701

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

through their counsel of record, respectfully submit this Trial Memorandum to assist the Court in the trial of this action.

## INTRODUCTION

Plaintiffs in this case claim that while they were incarcerated at Snake River Correctional Institution (SRCI) on December 9, 2020, they were exposed, either directly or secondarily, to OC spray during a riot on their housing unit and were not given the opportunity to take a shower for two to three days following the event. Plaintiffs allege that the named Defendants in this case ignored their requests for showers and they were left to suffer from the effects of the OC spray until a shower was permitted multiple days later. All Defendants deny Plaintiffs' claims.

## PROCEDURAL HISTORY

Plaintiffs filed their complaint on December 8, 2022, naming the Oregon Department of Corrections (ODOC), Jaime Miller, Mike Real, David Jantz, Brandon Kropp, Blake Surerus, Stacy Brotherson, Michael Franks, and Tyler Tarvin as Defendants in this action (see ECF No. 1). Plaintiffs raise two claims for relief in this complaint.

Plaintiffs' first claim alleges that the named individual Defendants violated Plaintiffs' Eighth Amendment rights to be free from cruel and unusual punishment when they were deliberately indifferent to the Plaintiffs' serious medical needs (ECF No. 1, pp. 13-14). Plaintiffs allege that Defendants Miller, Real, Jantz, Kropp, Surerus, Franks, and Tarvin were aware the Plaintiffs were suffering pain and anxiety from the exposure to OC spray and failed to provide them with the ability to decontaminate (ECF No. 1, p. 13). Plaintiffs allege Defendants Miller, Real, Jantz, Kropp, Surerus, and Franks failed to clean up the OC spray left in the housing unit in a timely manner (Id.). Plaintiffs Jokon and Libokmeto separately allege that Defendant Brotherson failed to provide them with any means of decontamination. Lastly, Plaintiffs allege that Defendants Miller, Real, and Jantz failed to properly supervise the other Defendants, and Defendant Miller failed to adequately train or supervise SRCI staff regarding the use of OC spray and proper decontamination methods (ECF No. 1, p. 12).

Page 2 -   DEFENDANTS' TRIAL MEMORANDUM
NA3/bm6/1017280701

In their second claim for relief, Plaintiffs allege that ODOC, acting by and through its employees, were negligent by failing to protect the Plaintiffs from the unreasonable risk of harm of using the chemical agent and ignoring its responsibility to provide each Plaintiff with any means of decontamination and to clean up the chemical agents in a timely manner (ECF No. 1, p. 14-15). Plaintiffs claim that as a result of this, Plaintiffs experienced pain, suffering, and emotional distress (ECF No. 1, p. 15).

## STATEMENT OF THE CASE

On December 8, 2022, Plaintiffs filed their complaint in this case, alleging that on December 9, 2020, they were housed in unit C of Complex 3 (Unit 3C) at SRCI, and a fight broke out among numerous adults in custody (AIC) around 9:00 PM to which ODOC security staff had to respond. (ECF No. 1, ₱₱ 18-19). The officers gave orders for the AICs to stop fighting, which was ineffective.  Due to the number of AICs engaged in the riot and their refusal to heed several ODOC staff orders, OC spray was deployed through the crash gate into Unit 3C's dayroom to stop the fight and gain the AICs' compliance. Those involved in the fighting or known to have been sprayed directly were taken to the disciplinary segregation unit (DSU) and the remaining prisoners were sent to their assigned cells in Unit 3C. (ECF No. 1, ₱ 21).

Plaintiffs Tarjen Jokon and James Libokmeto were directly exposed to the OC spray and taken to the DSU. (ECF No. 1, ₱₱ 27-28, 32-33). Plaintiff Jacob Strock claims he was in the unit's dayroom and was exposed to the OC spray in that it got in his eyes, nose, and mouth. (ECF No. 1, ₱ 23). Plaintiff James Dentel alleges he was in a shower stall next to the crash gate and was directly exposed to the OC spray. (ECF No. 1, ₱ 37). Plaintiffs Dylan Peterson and Michael Wesley claim they were in their cells at the time of the riot and were secondarily exposed to the OC spray wafting in from the dayroom. (ECF No. 1, ₱₱ 41, 47). All Plaintiffs had the opportunity to wash their face, eyes, and exposed skin. (ECF No. 59, p. 2). All the cells in Unit 3C have sinks with cold running water, and the AICs would have clean clothes and towels in their cells, or they had the ability to ask for clean clothes or towels if none were in their cells at

Page 3 -    DEFENDANTS' TRIAL MEMORANDUM
NA3/bm6/1017280701

the time. Additionally, the Plaintiffs that were taken to the DSU were offered clean clothes and the ability to take a shower. Plaintiffs Jokon and Libokmeto refused the offers of a shower. (ECF No. 59, p. 1).

Defendant Brandon Kropp was the only Correctional Officer on duty in Unit 3C at 9:00 PM on December 9, 2020, and once the riot began, he secured the unit and made the response call to get assistance with quelling the fighting. (ECF No. 1, ⁋ 52; ECF No. 59, p.1). Defendant Stacy Brotherson was a Correctional Officer at the time and was assigned to the DSU. (ECF No. 1, ⁋ 51). Defendant Blake Surerus was a Correctional Officer at the time of the incident and started his work shift on Unit 3C at 10:00 PM on December 9, 2020. (ECF No. 1, ⁋ 50). Defendant Tyler Tarvin was a Correctional Officer at the time of the incident and worked the day shift on Unit 3C on December 10, 2020. (ECF No. 1, ⁋ 53). Defendant Jaime Miller was the Assistant Superintendent of Security at SRCI during the time of the riot and was responsible for reviewing the Unusual Incident Report (UIR) and chemical agent deployment forms to ensure they were complete. (ECF No. 59, p. 1). Defendant Mike Real was a Correctional Lieutenant at the time of the incident and arrived at Unit 3C after the OC spray was deployed and was responsible for completing the narrative section of the UIR. (ECF No. 59, p. 1). Defendant David Jantz was the Corrections Captain and the Officer in Charge at the time of the incident. (ECF No. 1, ⁋ 11). Defendant Michael Franks was a Correctional Officer at SRCI during the time of the incident but was working on a different unit and was not involved in any way in the underlying facts of this case.

The large-scale fight that occurred on December 9, 2020, involved at least 25 AICs who continued to fight after they were directed by multiple ODOC security staff to stop fighting and get on the floor. The responding ODOC security staff were required to deploy OC spray in order to gain compliance. (ECF No. 59, p. 1). Once Unit 3C was secured and all the AICs were either in their cells or in the DSU, Officer Thomas Cabral walked the unit and conducted a welfare check of the AICs in their cell. (ECF No. 59, p. 1). Medical staff was called for two of the AICs

Page 4 -    DEFENDANTS' TRIAL MEMORANDUM
NA3/bm6/1017280701

for injuries they sustained, and none of the Plaintiffs in this case notified Officer Cabral or any of the named Defendants of the need for medical assistance. (Id.). Unit 3C had to be locked down at that time due to it being a crime scene and needing to be cleaned of blood, other bodily fluids, and OC spray. (Id.).

Plaintiffs Jokon and Libokmeto, when they arrived at the DSU, were given the opportunity to decontaminate themselves with an offer of clean clothes, the use of the face/eye washing station, and a shower. (ECF No. 59, p. 1). Both Plaintiffs refused the face/eye washing station, and both refused the offer of a shower. (Id.). They were also screened by ODOC medical staff for injuries or other treatment needs, and no medical assistance was needed. (Id.). They were observed every ten minutes for thirty minutes for any adverse effects of the OC spray exposure and none was noted. (Id.).

For the AICs that were celled in on Unit 3C, they had access to clean clothes, sinks, and clean towels in their units. Additionally, they had the ability to contact the housing officer via their in-cell call buttons if they needed assistance or clean clothes or towels. Numerous ODOC security staff toured the unit soon after the riot, and Defendants Surerus, Kropp, and Tarvin conducted regular tier checks on the unit over the following days and would have seen and/or responded to any AICs who were in distress or otherwise needed assistance. (ECF No. 59, p. 2). None of the Plaintiffs who remained on Unit 3C notified any ODOC employees at any time between December 9 and December 12, 2020, that they needed clean clothes or towels, or medical assistance due to exposure to the OC spray. (Id.). The showers were not available to these AICs until the crime scene was cleared and Unit 3C was cleaned up.

Due to the numerous assaults that occurred on December 9, 2020, Unit 3C became a crime scene that needed to be handled by the Oregon State Police (OSP). Unit 3C could not be cleaned up until OSP arrived and cleared it as a crime scene. Unit 3C was also covered in OC spray, blood, and other bodily fluids that needed to be cleaned up once OSP released the unit as a

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

crime scene. This clean up took numerous hours to complete. (ECF No. 59, p. 1). Once the Unit was cleared and cleaned the AICs on the unit were permitted to shower.

Defendants ODOC, Jamie Miller, Mike Real, David Jantz, Brandon Kropp, Blake Surerus, Stacy Brotherson, Michael Franks, and Tyler Tarvin deny the allegations made about their actions or inactions during the incident.

## LAW OF THE CASE

Plaintiffs Jacob Strock, Tarjen Jokon, James Libokmeto, James Dentel, Michael Wesley, and Dylan Peterson have the burden of proving that the alleged failures to act by Defendants Jamie Miller, Mike Real, David Jantz, Brandon Kropp, Blake Surerus, Stacy Brotherson, Michael Franks, and Tyler Tarvin deprived the Plaintiffs of particular rights under the United States Constitution. In this case, the Plaintiffs allege the Defendants deprived them of their rights under the Eighth Amendment to the Constitution when they subjected them to cruel and unusual punishment by failing to provide them with the opportunity to decontaminate in a timely manner after they were directly or secondarily exposed to OC spray. They also allege that Defendants Miller, Real, and Jantz are liable as supervisors by failing to properly train, control, discipline or supervise their subordinates in the proper decontamination process. Similarly, they allege that Defendant ODOC, by and through its employees, was negligent in denying the Plaintiffs the ability to decontaminate themselves from the OC spray exposure within a reasonable timeframe. Plaintiffs bear the burden of proving the negligence claim by a preponderance of the evidence.

### Plaintiffs were not subjected to cruel and unusual punishment

Under the Eighth Amendment, a convicted adult in custody has the right to be free from "cruel and unusual punishments." This includes the right to adequate care for serious medical needs. In order to prove Defendants deprived Plaintiffs of this right, the Plaintiffs must prove the following additional elements by a preponderance of the evidence:

1. Plaintiffs faced a *serious* medical need;

NA3/bm6/1017280701

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

2. Defendants were deliberately indifferent to that medical need, that is, Defendants knew of the medical need and disregarded it by failing to take reasonable measures to address it; and

3. The failure to act by Defendants caused harm to the Plaintiffs.

"Deliberate indifference is the conscious choice to disregard the consequences of one's acts or omissions. A "serious medical need" is a condition that if unaddressed could result in further significant injury or the unnecessary or wanton infliction of pain.

In determining whether Defendants violated any of the Plaintiffs' rights as alleged, deference should be given to prison officials in the adoption and execution of policies and practices that in their judgement are needed to preserve discipline and to maintain internal security.

Based on the statement of the case, Defendants did not act with deliberate indifference to any of the Plaintiffs' serious medical needs because they took reasonable steps to provide or ensure that appropriate decontamination measures were offered or available for Plaintiffs who were either directly or secondarily exposed to the OC spray.

**ODOC was not negligent in preventing Plaintiffs from properly decontaminating themselves, or with cleaning up the housing unit in a timely manner.**

The law requires every person to use reasonable care to avoid harming others. A person's conduct is negligent if that person fails to use reasonable care. Reasonable care is the degree of care and judgment used by reasonably careful people in the management of their own affairs to avoid harming themselves or others. A person fails to use reasonable care when that person does something that a reasonably careful person would not do or fails to do something that a reasonably careful person would do under similar circumstances. In deciding whether a person used reasonable care, one must consider the dangers apparent or reasonably foreseeable when the events occurred. One must not consider the conduct in light of later events; instead, must

NA3/bm6/1017280701

consider what the person knew or should have known at the time. *See Fazzolari v. Portland School Dist. No. 1J*, 303 Or. 1 (1987); *Bjorndal v. Weitman,* 344 Or. 470, 478 (2008).

Correctional officers are authorized to employ the amount of force that is reasonably believed to be necessary to overcome a threat, thereby minimizing the risk of injury to the officer, AICs, and bystanders. OAR 291-022-0105(3). Reasonable force is "force, which is objectively reasonable, based on the totality of the circumstances and the facts known to the officer at the time." OAR 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(11). OC spray is a chemical agent that when deployed is designed to cause sufficient physiological effects to stop, control, or temporarily incapacitate an individual. OAR 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(1). When OC spray is utilized to address a safety threat, "[t]hose affected by a chemical agent shall be permitted to wash their face, eyes and other exposed skin areas, as soon as safely practical after the chemical agent has been used." OAR 291-022-0160(f). AICs who receive a direct application of the OC spray shall be examined by a health care professional, shall be observed about every ten minutes for the first thirty minutes, and shall be offered a shower as soon as time and circumstances permit. OAR 291-013-0104(j) & (k).

In this case, Plaintiffs do not challenge the amount or type of force used during the riot, but the subsequent actions or inactions of the Defendants in permitting Plaintiffs to decontaminate from the effects of the type of force used. They also claim that Defendants Miller, Real, and Jantz failed to properly supervise the other Defendants, and Defendant Miller failed to properly train the rest of the Defendants on proper decontamination from the use of OC spray. However, the evidence will demonstrate that not only are ODOC security staff properly trained in the deployment of OC spray, but also the mandated decontamination process. During these trainings, ODOC security staff even get personally and directly exposed to OC spray and thus learn the methods of decontamination and personally experience the effectiveness (or lack thereof) of those methods.

NA3/bm6/1017280701

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

Defendants in this case exercised reasonable care in ensuring that those Plaintiffs, who were known to the Defendants to have been directly exposed to OC spray at the time of the incident on December 9, 2020, were offered the ability to properly decontaminate via the provision of clean clothes, access to a face/eye washing station and the offer of a shower. Defendants in this case also exercised reasonable care in ensuring that those inmates who remained in unit 3C after the riot was quelled, had the ability to properly decontaminate via running water in their cell, clean clothes, clean towels, and the ability to notify someone if they needed additional assistance.

Additionally, the type of OC spray that was utilized during the events of December 9, 2020, does not aerosolize and therefore, could not have continuously re-exposed any of the Plaintiffs that remained on unit 3C. Those Plaintiffs had in-cell call buttons they could have used to notify the ODOC employees on duty at the time that they were experiencing negative side effects, needed medical assistance, or needed additional assistance with decontamination. There were also correctional officers doing regular tier checks on Unit 3C from the time of the riot until Unit 3C was reopened to the AICs housed on the unit. At any time, the Plaintiffs who remained on the unit could have notified those correctional officers that they needed additional assistance with decontamination or that they were experiencing negative side effects from the OC spray exposure and ask for medical assistance. Notably, the medical records reviewed for the relevant time period showed that none of the Plaintiffs requested medical care following the December 9, 2020, incident. The two Plaintiffs who were directly exposed and taken to DSU were offered the use of a face/eye washing station, clean clothes, a shower, and medical attention, and if they did not get any of those things it was because they refused such assistance.

Plaintiffs failed to mitigate any purported negative effects experienced by their refusal to utilize the decontamination methods available to them, and/or by failing to notify any of the Defendants through available means that they were suffering such negative effects. Defendants followed the protocol required of them to quell the riot that took place on December 9, 2020,

Page 9 -    DEFENDANTS' TRIAL MEMORANDUM
NA3/bm6/1017280701

secure the crime scene that was unit 3C, ensure decontamination methods were available or offered to the Plaintiffs, and subsequently open the unit to regular operation once the crime scene was released by law enforcement and properly cleaned up.

**Defendants Jamie Miller, Mike Real, David Jantz, Brandon Kropp, Blake Surerus, Stacy Brotherson, Michael Franks, and Tyler Tarvin are entitled to qualified immunity with respect to Plaintiffs' claims.**

Defendants Miller, Real, Jantz, Kropp, Surerus, Brotherson, Franks, and Tarvin are qualifiedly immune.

"The doctrine of qualified immunity protects government officials `from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231, 129 (2009), *quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "To be clearly established, a right must be sufficiently clear `that every `reasonable official would [have understood] that what he is doing violates that right.'"" *Reichle v. Howards*, 566 U.S. 658 (2012), *quoting Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). "While a case directly on point is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 563 U.S. at 741. "Put simply, qualified immunity protects `all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015), *quoting Malley v. Briggs*, 475 U.S. 335, 341 (1986). Qualified immunity "is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

Here, the evidence will show that the named Defendants' conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Accordingly, the named Defendants did not knowingly violate the law. As such, they are entitled to qualified immunity.

Page 10 -  DEFENDANTS' TRIAL MEMORANDUM
NA3/bm6/1017280701

**Defendants Jantz, Real, and Miller are not liable under a theory of respondeat superior.**

Defendants Jantz, Real, and Miller cannot be held liable for the actions of their subordinates in a supervisory capacity.

Plaintiffs cannot succeed on any claims against these Defendants solely on general allegations of them failing to protect while being in a supervisory role. State officials are generally not liable under section 1983 on a respondeat superior theory. *Monell v. Dep't. of Soc. Servs. of City of New York*, 436 U.S. 658, 691-94 (1978). A "supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Jane Doe A v. Special School Dist.*, 901 F.2d 642, 645 (8th Cir. 1990) ("The individual defendants are subject to personal liability only if it can be proved that they: (1) received notice of a pattern of unconstitutional acts committed by subordinates; (2) demonstrated deliberate indifference to or tacit authorization of the offensive acts; (3) failed to take sufficient remedial action; and (4) that such failure proximately caused injury.").

Here, the Plaintiffs will not be able to put forth sufficient evidence to prove that Defendants Jantz, Real, or Miller were aware of any unconstitutional acts committed by their subordinates, demonstrated any deliberate indifference or tacit authorization of such offensive acts, or failed to take sufficient remedial action. Nor will they be able to prove that Defendant Miller failed to ensure sufficient training and supervision regarding the appropriate use of force against AICs and providing appropriate means for AICs to decontaminate themselves after being exposed to OC spray.

Page 11 -  DEFENDANTS' TRIAL MEMORANDUM
NA3/bm6/1017280701

## CONCLUSION

For the aforementioned reasons, Plaintiffs cannot prevail on their claims.

DATED June  2, 2026.

Respectfully submitted,

DAN RAYFIELD
Attorney General


_s/Nathaniel Aggrey_
NATHANIEL AGGREY #172283
SETH LICHENSTEIN-HILL #212684
Senior Assistant Attorneys General
Trial Attorneys
Tel (503) 947-4700
Fax (503) 947-4791
Nathaniel.Aggrey@doj.oregon.gov
Seth.Lichenstein-Hill@doj.oregon.gov
Of Attorneys for Defendants

Page 12 -  DEFENDANTS' TRIAL MEMORANDUM
NA3/bm6/1017280701

## CERTIFICATE OF SERVICE

I certify that on June  2, 2026, I served the foregoing DEFENDANTS' TRIAL

MEMORANDUM upon the parties hereto by the method indicated below, and addressed to the

following:

| | |
|---|---|
| Juan C. Chavez | ___ HAND DELIVERY |
| Hannah Bland | ___ MAIL DELIVERY |
| Oregon Justice Resource Center | ___ OVERNIGHT MAIL |
| PO Box 5248 | ___ TELECOPY (FAX) |
| Portland, OR 97208 |  X  E-MAIL |
|    Attorneys for *Plaintiffs* | jchavez@ojrc.info |
| | hbland@ojrc.info |
| | ___ E-SERVE |

 

     *s/Nathaniel Aggrey*
NATHANIEL AGGREY #172283
SETH LICHENSTEIN-HILL #212684
Senior Assistant Attorneys General
Trial Attorneys
Tel (503) 947-4700
Fax (503) 947-4791
Nathaniel.Aggrey@doj.oregon.gov
Seth.Lichenstein-Hill@doj.oregon.gov
Of Attorneys for Defendants

Page 1 -    CERTIFICATE OF SERVICE
     NA3/bm6/744457779